G. SCOTT EMBLIDGE, State Bar No. 121613
MATTHEW K. YAN, State Bar No. 257918
EVAN M. ROSENBAUM, State Bar No. 310414
MOSCONE EMBLIDGE & RUBENS LLP
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone:   (415) 362-3599
Facsimile:    (415) 362-2006
Email:         emblidge@mosconelaw.com
                    yan@mosconelaw.com
                    rosenbaum@mosconelaw.com

Attorneys for Plaintiffs Dennis Richards,
Rachel Swann, and Six Dogs LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| DENNIS RICHARDS, an individual; RACHEL SWANN, an individual; and SIX DOGS LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF BUILDING INSPECTION OF THE CITY AND COUNTY OF SAN FRANCISCO; CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation; EDWARD SWEENEY, an individual; and MAURICIO HERNANDEZ, an individual,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS, COMMERCIAL DISPARAGEMENT/ TRADE LIBEL, INTENTIONAL MISREPRESENTATION**<br><br><u>DEMAND FOR JURY TRIAL</u> |

## INTRODUCTION

1.    A San Francisco Planning Commissioner, plaintiff Dennis Richards, publicly called into question the reliability of information provided by the San Francisco

Department of Building Inspection ("DBI"). He pointed out what appeared to be "pay-to-play" practices at DBI whereby DBI repeatedly turned a blind eye towards egregious permit violations by contractors who had close ties to DBI personnel.

2. Rather than do what a good governmental agency should do when such claims are made – investigate and take steps to reform – DBI acted instead like a crook worried about being exposed. It brazenly retaliated against Commissioner Richards, a business in which he was an investor, and his business partner in a transparent attempt to silence his criticism and calls for investigation into perceived corruption.

3. This Complaint addresses DBI's pattern of retaliatory conduct against Commissioner Richards, plaintiff Rachel Swann, and their company, plaintiff Six Dogs LLC (collectively, "Plaintiffs"). It also seeks to shed light on DBI's practices which are unlawful, undermine the public trust in government, and present a threat to public safety.

## PARTIES

4. Plaintiff Dennis Richards is an individual domiciled in San Francisco, California. At all times relevant hereto, he has been a member of the San Francisco Planning Commission.

5. Plaintiff Rachel Swann is an individual domiciled in San Francisco, California.

6. Plaintiff Six Dogs LLC is a California limited liability company with its principal place of business in San Francisco, California.

7. Defendant City and County of San Francisco is an entity established pursuant to Article XI, section 6 of the California Constitution. The San Francisco Department of Building Inspection is the agency responsible for issuing permits and overseeing the enforcement state and local building codes and regulations. As such, inspectors of DBI are local officials of the City and County of San Francisco.

8. On information and belief, Defendant Edward Sweeney serves as the Deputy Director, Inspection Services for DBI. As such, he is a local official of the City and County of San Francisco.

9. On information and belief, Defendant Mauricio Hernandez serves as a Senior Building Inspector for DBI and reports to Deputy Director Sweeney. As such, he is a local official of the City and County of San Francisco.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. Supplemental jurisdiction is proper under 28 U.S.C. § 1367(a) and common law as the state law claims form part of the same case or controversy.

11. Venue is proper in this district because the defendant, a municipality, is located in this district, the real property at issue in this litigation is located within this district, and the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

### I. THE SIX DOGS PROPERTY

12. Commissioner Richards and Ms. Swann are partners and owners of Six Dogs LLC, a real estate development company.

13. Six Dogs owns one property, a four-unit building located at 3426-3432 22nd Street, San Francisco, California ("the Property" or "the Six Dogs Property"). Six Dogs hired well-known San Francisco engineer Patrick Buscovich to oversee a routine renovation of the Property, which is two stories over a garage level. The renovation involved no change to the building's envelope, and the Property remains a four-unit building. Beginning in 2018, several permits were granted for different aspects of the renovation work, which was substantially completed in early 2019. The permits and work were approved and/or inspected many times by multiple City departments, including DBI.

14. On or about September 2, 2019, Six Dogs listed the Property for sale.

### II. THE PLANNING COMMISSION'S REVIEW OF THE 18TH STREET PROJECT

15. In the meantime, on or about May 9, 2019, the San Francisco Planning Commission held a Discretionary Review hearing regarding a project at 3847-3849 18th

Street ("the 18th Street Project"). The Planning Department determined that the 18th Street Project involved a "two-story horizontal addition" with 882 cubic yards (which Plaintiffs are informed and believe would have filled over 160 dump trucks) of excavation without proper permits. The Planning Commission was incensed about how the 18th Street Project could have happened given that it supposedly was regularly inspected by DBI.

16. The 18th Street Project involved two convicted felons who Plaintiffs are informed and believe have close relationships with individuals at DBI.

17. On or about July 18, 2019, Commissioner Richards led an inquiry by several of his fellow Commissioners into how DBI could have approved a series of permits for the 18th Street Project and inspected the work on many separate occasions but failed to notice the huge amount of excavation and other work being done outside the scope of the permits for the project.

18. Commissioner Richards pointed out that the Planning Commission had been confronted with several recent projects involving gross misrepresentations on permit applications. Commissioner Richards went through many of the 18th Street Project's permits and explained that DBI appeared to have failed to conduct sufficient inspections, catch an obvious case of serial permitting, or notice a gross disparity between what was represented on the permitted plans and the actual conditions of the site.

19. Near the end of the July 18 meeting, Commissioner Richards spoke out strongly about a "pay-to-play" problem in the City. The Planning Commission voted to continue the hearing on the 18th Street Project to August 29, 2019.

20. On or about August 29, 2019, the Planning Commission held a meeting during which Commissioner Richards raised questions about DBI's testimony at the July 18 meeting. Commissioner Richards stated that he had "lost faith" in DBI and Commissioner Rich Hillis called for the City Attorney to conduct an investigation into what happened in the 18th Street Project. Both Commission President Myrna Melgar and Commissioner Richards spoke up and supported such an investigation. Other Planning

Commissioners agreed.  The Planning Commission voted to continue the matter to October 24, 2019.  On or about October 24, 2019, the Planning Commission voted again to continue the matter to December 19, 2019.

### III.     DBI RETALIATION AGAINST THE SIX DOGS PROPERTY

21.     Less than a month after Commissioner Richards called for a City Attorney investigation and while the matter concerning the 18th Street Project was still pending before the Planning Commission, DBI began to retaliate against Commissioner Richards.

22.     On or about September 25, 2019, DBI supposedly received an anonymous complaint about work on Six Dogs' Property—work that had been performed and inspected months earlier.  On information and belief, this anonymous complaint followed the inspection of the Property's records by Patricia Urrutia, the wife of a disgraced contractor currently being sued by the City for egregious conduct relating to building permits and who has close relationships with employees of DBI.

23.     Even though there was no indication of public safety or other urgent issues, the next day, Thursday, September 26, 2019, Defendant Mauricio Hernandez, a DBI Senior Building Inspector, immediately conducted a site inspection at the Property and then sent an Inspection Request Letter to Six Dogs.

24.     That same day, Mr. Hernandez and his supervisor, Defendant Edward Sweeney, a DBI Deputy Director, told Mr. Buscovich that they were going to find a way to come down hard on the Property.

25.     The next day, Friday, September 27, 2019, Commissioner Richards received a text message from Board of Appeals Member Daryl Honda stating: "Hey bro, there's some not so nice stuff going around about you right now.  What's up."

26.     Commissioner Richards responded to the text from Board Member Honda by calling him and asking what he had heard and where he had heard it.  Board Member Honda replied that he "hears things" and that Commissioner Richards was in deep trouble with DBI.  He intimated to Commissioner Richards that Commissioner Richards needed to go to DBI to get this resolved.  Commissioner Richards understood Board Member

Honda to be telling him that he needed to make a deal with Deputy Director Sweeney, such that DBI would back off the Six Dogs Property if Commissioner Richards ceased his inquiry into the 18th Street Project.

27. Commissioner Richards told Board Member Honda that he could not be bought and that he would not give in to extortion. He told Board Member Honda to tell Deputy Director Sweeney "to go to hell."

28. The next business day, Monday, September 30, 2019, DBI issued a Notice of Violation relating to the Six Dogs Property. The Notice of Violation included standard language giving Six Dogs thirty days to address the alleged violations.

29. However, that same day, Senior Building Inspector Hernandez signed a letter to Six Dogs <u>revoking</u> nine separate permits relating to the Property, many of which were for work that had long since been completed and approved by DBI.

30. Based on records produced pursuant to public records requests, DBI's actions are unprecedented.

31. During this same time period, DBI claims that "a folder was delivered [to DBI] concerning an approved plan PA#201807285200 [a permit associated with the project]. The letter critizes [sic] the approval of PA#201807285200." In other words, the folder contains a critique of the plans prepared by Mr. Buscovich relating to the Property, including an exact copy of some of his plans. Those plans are protected by copyright and other laws. Plaintiffs are informed and believe for legal and other reasons, access to plans and the ability to copy plans at DBI is limited to a small group of people, including Defendant Sweeney. Because Mr. Buscovich did not share his plans with any third parties, Plaintiffs are informed and believe that the supposedly anonymous plan critique could have occurred only if DBI improperly provided Mr. Buscovich's plans to a third party. In fact, Defendants utilized the unlawful critique of Mr. Buscovich's plans in claiming that violations exist at the Property.

32. Had Six Dogs and Commissioner Richards been treated like other property owners against whom complaints had been lodged, DBI would have inspected the

Property, contacted Six Dogs about potential violations, and worked with Six Dogs to expeditiously resolve any outstanding issues. Instead, DBI, through Senior Building Inspector Hernandez, revoked all of the project's permits, and when Six Dogs said it was going to appeal DBI's actions to the San Francisco Board of Appeals, Mr. Hernandez told Six Dogs that DBI would not work with Six Dogs to resolve any issues unless Six Dogs agreed not to appeal the unwarranted revocations.

33. Six Dogs appealed the permit revocations to the City's Board of Appeals.

34. On or about December 4, 2019, at a Board of Appeals hearing, members of the Board repeatedly expressed surprise that DBI revoked permits for the types of violations that DBI listed in the Notice of Violation.

## IV. ADDITIONAL RETALIATION BY DBI

35. DBI's retaliatory actions did not stop with the issuance of a Notice of Violation and the unwarranted revocation of permits relating to the Property.

36. On or about December 3, 2019 and December 10, 2019, Six Dogs held two brokers' open houses for real estate brokers to view the Property. At each event, DBI Inspector William Walsh arrived and loudly complained about violations on the Property. On information and belief, Inspector Walsh's presence at the open houses was intentional and was intended to interfere with Six Dogs' ability to market the Property. After Inspector Walsh's actions Ms. Swann received many calls and comments from other brokers claiming that the Property was damaged goods.

37. On or about December 18, 2019, on information and belief, DBI sent an inspector, Bettrieta Kime, from the San Francisco Fire Department, to another property owned by Ms. Swann. On information and belief, Inspector Kime's purpose in visiting this property was to find anything for which she could cite Ms. Swann. Ms. Kime unlawfully gained entry into her building through false representations to a building tenant. She then posted a Notice of Violation on Ms. Swann's property.

38. As a direct result of DBI's actions, including those of Senior Building Inspector Hernandez and Deputy Director Sweeney, Commissioner Richards, Ms.

Swann, and Six Dogs have suffered substantial damages including economic losses relating to the Property, severe emotional distress, and irreparable harm to reputation.

39. On or about December 23, 2019, Commissioner Richards, Ms. Swann, and Six Dogs LLC submitted to the Controller's Office, Claims Division a Claim Against the City and County of San Francisco. The City rejected the claim on February 10, 2020.

**FIRST CAUSE OF ACTION**
**(Violation of Civil Rights, 42 U.S.C. § 1983)**

40. Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

41. Defendants intentionally targeted properties owned by Six Dogs and Ms. Swann because of Six Dogs' and Ms. Swann's association with Commissioner Richards.

42. In issuing Notices of Violation against the Property and Ms. Swann's property, in revoking permits, and in visiting and causing the visiting of the Property during open houses, Defendants acted in the performance of their official duties as San Francisco building inspectors.

43. Defendants acted under color of local San Francisco ordinance by using their authority as building inspectors to issue Notices of Violation, revoke permits, and make public statements to members of the real estate community regarding the status of the Property.

44. Defendants' actions were in direct response to and meant to cause the deprivation of Commissioner Richards's exercise of his right of freedom of speech guaranteed by the First and Fourteenth Amendments of the United States Constitution.

45. Defendants' actions were in response to Commissioner Richards's speech concerning a matter of public concern, namely DBI's apparent corruption.

46. Six Dogs, Commissioner Richards, and Ms. Swann were harmed as a result of Defendants' actions.

## SECOND CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Relations)

47. Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

48. Plaintiffs held two open houses for real estate brokers whereby Plaintiffs established an economic relationship with the real estate brokers that probably would have resulted in an economic benefit to Plaintiffs by leading to the sale of the Property.

49. Members of DBI knew of the relationship.

50. Members of DBI engaged in conduct intended to falsely signal to the real estate brokers that there was a problem with the Property so as to affect their decision to proceed with a purchase of the Property, encouraging them instead to avoid any consideration or purchase of the Property.

51. By engaging in this conduct, members of DBI intended to disrupt the economic relationship between Plaintiffs and the real estate brokers.

52. The relationship was disrupted.

53. Plaintiffs were harmed because of the increased carrying costs of the Property and the lost income and interest on that income.

54. The conduct of the members of DBI, including Mr. Sweeney and Mr. Hernandez, was a substantial factor in causing Plaintiffs' harm.

55. The members of DBI were acting within the scope of their employment with DBI.

## THIRD CAUSE OF ACTION
### (Commercial Disparagement/Trade Libel)

56. Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

57. Walsh made loud statements regarding the Notice of Violation at the Property that would be clearly understood to disparage the quality of Plaintiffs' Property and to suggest that the Property was not fit to be sold.

58. These statements were made to members of the public, including real estate agents or brokers and prospective purchasers of the Property.

59. The suggestions Defendants intended to be taken from those statements – that the Property was not fit to be sold – were false.

60. Defendants knew that the statements were untrue or acted with reckless disregard of the truth or falsity of the statements.

61. Defendants knew or should have recognized that someone else might act or forbear action in reliance on the statements.

62. Defendants made the statements with the intent or reasonable belief that the statements would cause financial loss for the Plaintiffs' business.

63. As a direct result of Defendants' statements, Plaintiffs have been unable to sell the Property, and have suffered financial loss in the form of increased carrying costs and lost income and interest on that income.

64. The members of DBI were acting within the scope of their employment with DBI.

**FOURTH CAUSE OF ACTION**
**(Trespass)**

65. Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

66. Ms. Swann owns the property located at 1126 Sanchez Street, San Francisco, California 94114 (the "Swann Property").

67. Ms. Kime, an employee of the Fire Department, intentionally entered the Swann Property.

68. DBI intentionally caused Ms. Kime to enter the Swann Property.

69. Ms. Kime represented to a tenant of the Swann Property that Ms. Swann had consented to a scheduled appointment.

70. This representation was false.

71. DBI and Ms. Kime knew at the time of making the representation that it was false.

72. DBI and Ms. Kime intended that Ms. Swann's tenant would rely on the false representation to grant permission for Ms. Kime to enter the Swann Property.

73. Ms. Swann's tenant reasonably relied on the representation to grant permission for Ms. Kime to enter the Swann Property.

74. Ms. Swann did not give her permission for Ms. Kime to enter the Swann Property, and the tenant would not have given permission for Ms. Kime to enter the Swann Property but for the false representations.

75. Ms. Swann has been harmed.

76. Ms. Kime's entry into the Swann Property and the subsequent conduct related to Ms. Swann's property, including the issuance of a Notice of Violation, were substantial factors in causing Ms. Swann's harm.

77. Ms. Kime was acting under color of law based on her employment with the City and County of San Francisco.

### FIFTH CAUSE OF ACTION
### (Violation of Civil Rights, 42 U.S.C. § 1983)

78. Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

79. Ms. Swann owns the property located at 1126 Sanchez Street, San Francisco, California 94114.

80. Ms. Kime, an employee of the Fire Department, intentionally entered the Swann Property.

81. Ms. Kime was acting or purporting to act in the performance of her official duties as an employee of the City.

82. DBI intentionally caused Ms. Kime to enter the Swann Property.

83. Ms. Kime represented to a tenant of the Swann Property that Ms. Swann had consented to a scheduled appointment.

84. This representation was false.

85. DBI and Ms. Kime knew at the time of making the representation that it was false.

86. DBI and Ms. Kime intended that Ms. Swann's tenant would rely on the false representation to grant permission for Ms. Kime to enter the Swann Property.

87. Ms. Swann's tenant reasonably relied on the representation to grant permission for Ms. Kime to enter the Swann Property.

88. Ms. Swann did not give her permission for Ms. Kime to enter the Swann Property, and the tenant would not have given permission for Ms. Kime to enter the Swann Property but for the false representations.

89. Ms. Kime did not have a warrant.

90. The conduct of Ms. Kime and DBI violated Ms. Swann's rights of privacy and security against arbitrary invasion by government officials guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

91. Ms. Swann has been harmed by Ms. Kime's conduct.

92. Ms. Kime's entry onto Ms. Swann's property was a substantial factor in causing Ms. Swann's harm.

## SIXTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

93. Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

94. The actions of Senior Building Inspector Hernandez, Deputy Director Sweeney, and other members of DBI, have been outrageous. These members of DBI abused their positions of authority to harass Commissioner Richards and Ms. Swann.

95. The members of DBI intended to cause, or acted with reckless disregard that they would cause, Commissioner Richards and Ms. Swann emotional distress.

96. Commissioner Richards and Ms. Swann have suffered severe emotional distress. They have suffered shock, acute anxiety and panic attacks, and have been

humiliated by Defendants' actions, including but not limited to, by political attacks and the intentional spreading of abject lies on social media and in the "press" by individuals who had their own disagreements with Commissioner Richards's positions on issues and projects. On information and belief, these attacks were promulgated and encouraged by officials at DBI.

97. The conduct of the members of DBI, including Mr. Hernandez and Mr. Sweeney, was a substantial factor in causing Commissioner Richards and Ms. Swann severe emotional distress.

98. The members of DBI were acting within the scope of their employment with DBI.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

a. Compensatory and punitive damages in an amount to be proven at trial;

b. An order enjoining DBI from violating Plaintiffs' Constitutional rights, including the freedom of speech under the First Amendment of the United States Constitution;

c. Attorneys' fees pursuant to 42 U.S.C. § 1988(b) or any other applicable law;

d. Costs of suit; and

e. Such other and further relief as the Court deems just and proper.

/ / /

/ / /

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 19, 2020              MOSCONE EMBLIDGE & RUBENS LLP

                                      By: */s/ G. Scott Emblidge*
                                              G. Scott Emblidge
                                              Matthew K. Yan
                                              Evan M. Rosenbaum

                                      Attorneys for Plaintiffs Dennis
                                      Richards, Rachel Swann, and Six
                                      Dogs LLC