1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS RICHARDS, et al., | Case No.  20-cv-01242-JCS |
| Plaintiffs, | |
| v. | **ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| DEPARTMENT OF BUILDING INSPECTION OF THE CITY AND COUNTY OF SAN FRANCISCO, et al., | Re: Dkt. No. 15 |
| Defendants. | |

## I.      INTRODUCTION

Plaintiffs Dennis Richards, Rachel Swann, and Six Dogs LLC assert that Defendants the City and County of San Francisco ("San Francisco" or the "City"), the San Francisco Department of Building Inspection ("DBI"), and DBI employees Edward Sweeney and Mauricio Hernandez retaliated against Plaintiffs based on Richards's protected speech as a member of the San Francisco Planning Commission criticizing perceived corruption at DBI.  Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to stay the case pending resolution of administrative appeals challenging DBI's revocation of certain permits issued to Six Dogs.  The Court held a hearing by public videoconference on July 10, 2020.  For the reasons discussed below, Defendants' motion is GRANTED as to Plaintiffs' claim for intentional infliction of emotional distress, which is DISMISSED with leave to amend.  If Plaintiffs wish to pursue that claim, they may file a second amended complaint no later than July 24, 2020.  The motion is otherwise DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

_United States District Court_
_Northern District of California_

1    II.    **BACKGROUND**

2        A.    **Allegations of the Complaint**

3        Because a plaintiff's allegations are generally taken as true in resolving a motion to

4    dismiss under Rule 12(b)(6), this section summarizes the allegations of Plaintiffs' complaint as if

5    true.  Nothing in this order should be construed as resolving any issue of fact that might be

6    disputed at a later stage of the case.

7        Plaintiff Richards was at relevant times a member of the San Francisco Planning

8    Commission.  1st Am. Compl. ("FAC," dkt. 9) ¶ 4.  On May 9, 2019, the Planning Commission

9    held a hearing regarding an addition being built on a property located on 18th Street in San

10   Francisco (the "18th Street Project").  *Id.* ¶ 15.  The Planning Commission determined that DBI

11   had failed to stop unpermitted work on the project, despite frequent DBI inspections.  *Id.* ¶¶ 15,

12   17.  Two individuals associated with the 18th Street Project had criminal histories and close

13   relationships with DBI employees.  *Id.* ¶ 16.  At a July 18, 2019 meeting of the Planning

14   Commission, Richards spoke out against DBI's failure to identify issues with the 18th Street

15   Project, and more generally condemned what he saw as a "pay-to-play" problem in San Francisco.

16   *Id.* ¶¶ 18–19.  At an August 29, 2019 meeting, Richards "raised questions about DBI's testimony"

17   and "stated that he had 'lost faith' in DBI."  *Id.* ¶ 20.  Several members of the Planning

18   Commission called for an investigation by the City Attorney, and the matter was continued to a

19   later hearing.  *Id.*

20       On September 2, 2019, Plaintiff Six Dogs, which is a real estate development company

21   owned by Plaintiffs Richards and Swann, listed a property that it owned on 22nd Street in San

22   Francisco (the "Six Dogs Property") for sale.  *Id.* ¶¶ 12–14.  Six Dogs had obtained several

23   permits since 2018 to remodel the building, and had largely completed work by the time the

24   property was listed for sale.  *Id.* ¶ 13.

25       On September 25, 2019, DBI purportedly received an anonymous complaint regarding the

26   work that Six Dogs had performed on its property, even though the work had been completed and

27   inspected months earlier.  *Id.* ¶ 22.  That complaint "followed the inspection of the Property's

28   records by . . . the wife of a disgraced contractor currently being sued by the City for egregious

United States District Court
Northern District of California

1    conduct relating building permits and who has close relationships with employees of DBI." *Id.*

2    The next day, "[e]ven though there was no indication of public safety or other urgent issues,"

3    Defendant Hernandez, a Chief Building Inspector at DBI, conducted a site inspection at the Six

4    Dogs Property and sent Six Dogs an inspection request letter. *Id.* ¶ 23.  Hernandez and his

5    supervisor Defendant Sweeney, a Deputy Director of DBI, told the engineer overseeing Six Dogs'

6    work on the property "that they were going to find a way to come down hard on the Property." *Id.*

7    ¶ 24.

8         The next day, Darryl Honda, a member of the Board of Appeals, told Richards that he had

9    heard Richards "was in deep trouble with DBI" and should resolve the issue with DBI. *Id.* ¶¶ 25–

10   26.  Richards told Honda "that he would not give in to extortion," and "to tell Deputy Director

11   Sweeney 'to go to hell.'" *Id.* ¶ 27.

12        The following business day, September 30, 2019, DBI issued a notice of violation for the

13   Six Dogs Property. *Id.* ¶ 28.  Although the notice included standard language allowing Six Dogs

14   thirty days to correct the issue, Hernandez signed a letter the same day revoking nine permits for

15   the Six Dogs Property, including permits for work that had already been completed and approved

16   by DBI. *Id.* ¶¶ 28–29.  According to Plaintiffs, such action is unprecedented, *id.* ¶ 30, and a

17   typical response by DBI would have been to contact the property owner about potential violations

18   discovered during an inspection and work with the owner to resolve any issues rather than

19   revoking permits, *id.* ¶ 32.  When Six Dogs told DBI that it intended to appeal the revocations to

20   the San Francisco Board of Appeals, Hernandez said that DBI would not work with Six Dogs to

21   resolve any issues unless Six Dogs agreed not to appeal. *Id.* ¶ 32.  Six Dogs appealed to the Board

22   of Appeals, and at a hearing in December of 2019, members of the Board of Appeals expressed

23   surprise that DBI revoked permits based on the violations that it identified. *Id.* ¶¶ 33–34.

24        At some point during this process, DBI purportedly received a letter criticizing the

25   decision to grant one of Six Dogs' permits. *Id.* ¶ 31.  The letter included copies of portions of the

26   plans for the project, which could have been accessed only by a small number of people at DBI,

27   including Sweeney. *Id.* ¶ 31.

28        During two open houses for real estate brokers at the Six Dogs Property in December of

United States District Court
Northern District of California

1    2019, "DBI Inspector William Walsh arrived and loudly complained about violations on the

2    Property," intentionally and effectively causing real estate brokers to lose interest in the property.

3    *Id.* ¶ 36.

4    On December 18, 2019, DBI sent an inspector from the San Francisco Fire Department,

5    non-party Bettrieta Kime, to a different property owned and inhabited by Swann in order to "find

6    anything for which she could cite Ms. Swann." *Id.* ¶ 37.  Kime falsely represented to a tenant that

7    Swann had consented to her entering the property for a scheduled appointment, and the tenant let

8    Kime into the property based on that representation.  *Id.* ¶¶ 37, 66–71.  Kime posted a notice of

9    violation on that property.  *Id.* ¶ 37.

10    In early March of 2020, someone broke into Swann's real estate office and ransacked her

11    personal office there.  *Id.* ¶ 38.  According to Plaintiffs, the fact that many valuable items were left

12    behind suggests that the incident was not "a common, random burglary," but Plaintiffs do not

13    allege that Defendants caused the break-in.  *See id.*

14    Plaintiffs assert the following claims: (1) a claim by all plaintiffs against Sweeney and

15    Hernandez under 42 U.S.C. § 1983 for violation of the First and Fourteenth Amendments to the

16    U.S. Constitution, on the basis that Defendants retaliated against Richards's protected speech by

17    issuing notices of violation as to both the Six Dogs Property and the property where Swann lives,

18    revoking permits, and denigrating the Six Dogs Property at open houses, *id.* ¶¶ 41–47; (2) a claim

19    by Swann against the City for trespass, based on Kime's use of a false statement to gain entry to

20    Swann's property, *id.* ¶¶ 48–60; (3) a claim by Swann against the Sweeney and Hernandez under

21    § 1983 for violating her rights under the Fourth and Fourteenth Amendments based on Kime's

22    trespass on her property, *id.* ¶¶ 61–76; and (4) a claim by all plaintiffs against all defendants for

23    intentional infliction of emotional distress ("IIED"), *id.* ¶¶ 77–82.

24    **B.    Facts Subject to Judicial Notice**

25    Defendants request judicial notice of a number of documents related to Six Dogs' appeal of

26    the revocation of its permits.  Plaintiffs do not object to the Court taking notice of these

27    documents.  The Court takes judicial notice of the administrative appeal documents as matters of

28    public record whose authenticity is not subject to dispute.

*United States District Court*
*Northern District of California*

1    Six Dogs and its engineer Pat Buscovich each filed an appeal to the San Francisco Board

2  of Appeals on October 15, 2019, asserting that DBI had no lawful basis for revoking any of the

3  permits, that DBI had never revoked permits for similar minor alleged violations in the past, and

4  that DBI revoked Six Dogs' permits in order to retaliate against Six Dogs' owners' speech

5  regarding perceived corruption and favoritism at DBI.  Request for Judicial Notice in Support of

6  Mot. ("1st RJN," dkt. 14) Ex. A.  Six Dogs asked the Board of Appeals to rescind the revocations

7  and all stop work orders, reinstate the permits, and "rescind any penalties, reassessments or fines

8  arising out of the revocation letter or associated Notices of Violations."  *Id.*

9    At a meeting on December 4, 2019, the Board of Appeals voted to continue the matter to

10  March 18, 2020 "so that the project sponsor can: (1) meet with the appropriate departments to

11  resolve the issues that were identified at the hearing, and (2) provide a complete and full set of

12  plans."  *Id.* Ex. B.  The hearing was further continued to May 6, 2020—after Defendants filed their

13  motion in this case, but before Plaintiffs filed their opposition brief—based on the COVID-19

14  public health emergency.  *See id.* ¶¶ 3–4 & Ex. C.

15    On May 22, 2020—the same day that Defendants filed their reply brief here—the Board of

16  Appeals issued the following identical decision in each appeal:

17          **PURSUANT TO** § 4.106 of the Charter of the City & County of San
          Francisco and Article 1, §14 of the Business & Tax Regulations Code
18          of the said City & County, and the action above stated, the Board of
          Appeals hereby **GRANTS THE APPEAL AND ORDERS** that the
19          REVOCATION  REQUEST  by  the  Department  of  Building
          Inspection is OVERTURNED so that these permits can be reinstated
20          and on the CONDITION that the permit holder cancel these permits
          within thirty (30) days of the release of this decision, on the basis that
21          this represents the agreement of the parties.

22  Request for Judicial Notice in Support of Reply ("2d RJN," dkt. 26) Exs. A, B.

23    **C.    Parties' Arguments**

24    Defendants move to stay the case under the abstention doctrine of *Younger v. Harris*, 401

25  U.S. 37 (1971), until administrative proceedings related to the revocation of Six Dogs' permits are

26  fully exhausted.  Mot. (dkt. 15) at 5–7.[2]  Plaintiffs contend that *Younger* abstention is not

27  _____

28  [2] Defendants initially also moved to *dismiss* the case based on *Younger* and under the *Rooker-*

United States District Court
Northern District of California

1    appropriate because administrative proceedings have concluded, and because the administrative

2    claim did not overlap with the relief sought here (which does not include reinstating the permits)

3    and the Board of Appeals had no authority to award the damages that Plaintiffs seek in this action.

4    Opp'n (dkt. 22) at 3–4.  Defendants respond that administrative proceedings have *not* concluded

5    because: (1) the Board of Appeal's decisions contemplate further administrative action, such as

6    Six Dogs canceling its permits within thirty days; and (2) California law considers an action to be

7    terminated only when all appeals have been exhausted, and the parties could further appeal the

8    Board of Appeals' decision to a court through administrative mandamus.  Reply at 3–4.  Plaintiffs

9    also argue that *Younger* does not apply here because the administrative proceedings at issue are

10   not similar to a criminal prosecution, and that even if the Court could stay this case under

11   *Younger*, the Court should not do so because Defendants' alleged bad faith and harassment would

12   render abstention inappropriate.  Opp'n at 5.  Defendants contend that Plaintiffs raised the same

13   arguments in this case as in their administrative appeal, that the Ninth Circuit has recognized

14   permitting issues as falling within *Younger*'s scope, and that this is not an extraordinary case

15   warranting a departure from the usual rules of *Younger* abstention.  Reply at 4–6.

16           Defendants move to dismiss Plaintiffs' IIED claim both on the basis that the conduct

17   alleged is not sufficiently extreme to support such a claim, and based on a number of California

18   statutes providing immunity to government entities and employees under particular circumstances.

19   Mot. at 8–11.  Plaintiffs contend that the outrageousness of Defendants' conduct is for a jury to

20   determine, and that a reasonable person would find the alleged retaliation and abuse of authority to

21   be sufficiently extreme to support an IIED claim.  Opp'n at 8–10.  According to Plaintiffs, the

22   immunity of section 821.6 of the California Government Code does not apply here because the

23   Ninth Circuit has limited it to cases of malicious prosecution, section 820.2 does not apply

24   because Plaintiffs have not alleged that any conduct at issue was a matter of deliberated policy,

25   and section 821.2, immunizing decisions regarding permits, does not apply because the case on

26   which Defendants rely considered a legislative vote rather than decisions by individual employees

27

28   *Feldman* doctrine, but withdrew those portions of their motion in their reply.  *See* Mot. at 5–8;
     Reply (dkt. 25) at 3 n.1.

1   to depart from an agency's standard practice. *Id.* at 10–12. Defendants argue that a different

2   Ninth Circuit decision construed section 821.6 more broadly, Reply at 6–7, that Sweeney and

3   Hernandez are policymakers entitled to immunity under section 820.2, *id.* at 9, and that section

4   821.2 applies because its only exception is for actions taken without authorization and Plaintiffs

5   have not argued or alleged that Defendants were not *authorized* to revoke Six Dogs' permits, *id.* at

6   9–10.

7          Defendants move to dismiss Swann's trespass claim based on sections 818.8 and 822.2 of

8   the Government Code, which immunize governments and public employees from claims based on

9   misrepresentations made in the scope of their employment unless—in a claim against an

10  individual employee—the representation was made with fraud, corruption, or malice. Mot. at 9–

11  10. Plaintiffs argue that those statutes only apply to financial or commercial misrepresentations,

12  and that regardless, the statutes do not apply to malicious or fraudulent misrepresentations, which

13  Plaintiffs contend they have sufficiently alleged. Opp'n at 7–8. Plaintiffs also note that

14  Defendants have not invoked the more pertinent immunity statute for public employees entering

15  private property, and could not do so because that statute applies only "'where such entry is

16  expressly or impliedly authorized by law.'" *Id.* at 7–8 (quoting Cal. Gov't Code § 821.8).

17  Defendants contend that sections 818.8 and 822.2 apply because "the only recoverable harm

18  Plaintiffs claim as a result of the Firefighter Kime's alleged misrepresentation is harm to Swann's

19  business or reputation as a result of the notices of violation of the fire code," and that Plaintiffs

20  have not alleged fraud with sufficient particularity under Rule 9(b) of the Federal Rules of Civil

21  Procedure. Reply at 7–9. To the extent that Plaintiffs based their IIED claim on Kime's actions,

22  Defendants contend that the same arguments apply to that claim. *See id.*

23  **III.    ANALYSIS**

24       **A.    Legal Standard Under Rule 12(b)(6)**

25       A complaint may be dismissed for failure to state a claim on which relief can be granted

26  under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss

27  under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

28  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage

United States District Court
Northern District of California

1   is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

2   sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

3   that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

4           In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of

5   material fact as true and construe[s] them in the light most favorable to the non-moving party."

6   *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a

7   lack of a cognizable legal theory or on the absence of facts that would support a valid theory.

8   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must "contain

9   either direct or inferential allegations respecting all the material elements necessary to sustain

10  recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)

11  (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading

12  that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

13  will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

14  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

15  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a

16  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

17  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible

18  on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the

19  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

20  (quoting *Twombly*, 550 U.S. at 570).

### B.    *Younger* Abstention

The doctrine of *Younger* abstention is based in comity and prohibits federal courts from

proceeding with cases that could effectively enjoin certain state proceedings.

> In civil cases . . . *Younger* abstention is appropriate only when the
> state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement
> actions or involve a state's interest in enforcing the orders and
> judgments of its courts, (3) implicate an important state interest, and
> (4) allow litigants to raise federal challenges. If these "threshold
> elements" are met, we then consider whether the federal action would
> have the practical effect of enjoining the state proceedings and
> whether an exception to *Younger* applies. Each element must be

*United States District Court*
*Northern District of California*

satisfied, and the date for determining whether *Younger* applies "is the date the federal action is filed."

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citations omitted without ellipses).  "[W]hen damages [rather than an injunction] are sought and *Younger* principles apply, it makes sense for the federal court to refrain from exercising jurisdiction *temporarily* by staying its hand until such time as the state proceeding is no longer pending," rather than dismissing the case.  *Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004).

The Ninth Circuit has held that a case brought to obtain compliance with a city's zoning ordinance implicates sufficient state interests for *Younger* to apply.  *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1083 (9th Cir. 1987).  Defendants are likely correct that San Francisco's interest in defending revocation of a building permit from challenge on appeal similarly meets that standard.  The Court also assumes for the sake of argument that rulings in Plaintiffs' favor in this case could implicitly render the revocations invalid, and that Plaintiffs raised, or could have raised, at least some of the arguments they present here either before the Board of Appeals or in an administrative mandamus action challenging a decision by the Board of Appeals.

The Court agrees with Plaintiffs, however, that administrative proceedings are not "ongoing."  The Board of Appeals held a hearing on May 6, 2020 and issued its final decisions on May 22, 2020.  *See* 2d RJN Exs. A, B.  Those decisions note that the deadline to request a rehearing was May 18, 2020 and that no rehearing was requested.  *Id.*  While the final decisions, adopting the parties' agreement, require Six Dogs to "cancel these permits within thirty (30) days of the release of this decision," *id.*, Defendants cite no authority holding that the time allowed to comply with a final order constitutes an "ongoing" proceeding for the purpose of *Younger* abstention.  Regardless, the deadline for compliance expired on June 21, 2020.  And while a party could likely challenge the Board of Appeals' decision in action for administrative mandamus,[3] Defendants have not identified any particular deadline to do so, and the default deadline for such a

---

[3] Such an appeal seems unlikely for a decision based on the parties' agreement, but it is at least conceivable that a party might argue that the decision misstates the terms of the agreement or that the party should not be bound by the agreement.

9

1   claim is "30 days after the last day on which reconsideration can be ordered," which has expired

2   here. *See* Cal. Gov't Code § 11523.  Defense counsel agreed at the hearing that the administrative

3   proceedings on which Defendants based their argument for *Younger* abstention have now

4   concluded.

5        Because there is no ongoing proceeding, Defendants' motion to stay Plaintiffs' federal

6   claims under *Younger* is DENIED.  Plaintiffs may proceed on those claims, which Defendants do

7   not challenge on any other basis.

8        **C.**   **Trespass Claim**

9        California courts have described the elements of a claim for trespass to land as follows:

10-17

> "'The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another.'" (*Cassinos v. Union Oil Co*. (1993) 14 Cal. App. 4th 1770, 1778.) The "'intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred. . . . The defendant is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong.'" (*Miller v. National Broadcasting Co*. (1986) 187 Cal. App. 3d 1463, 1480–1481.) "'[A] trespass may occur if the party, entering pursuant to a limited consent, i.e., limited as to purpose or place, proceeds to exceed those limits by divergent conduct on the land of another. "A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with."'" (*Cassinos*, at p. 1778.)

18   *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1178–79

19   (2014).  "[D]amage is not an essential element of a cause of action for trespass to real property

20   . . . ."  *Id.* at 1184.

21        Swann seeks to hold the City liable for Kime's alleged trespass on her property.[4]

22   Defendants do not dispute that Plaintiffs' allegations meet this element, or that Kime's alleged

23   entry to Swann's property through deception could constitute unauthorized entry for the purpose

24   of a trespass claim.  Instead, Defendants argue that the City and Kime are immune under section

25

26
27
28

---

[4] Although a local government may not be held liable under California law except as provided by statute, section 815.2 of the California Government Code provides that a public entity may be held liable for the conduct of its employees within the scope of their duties to the same extent as those employees can be held liable, and section 820 provides that, except as specified in other statutes, public employees may be held liable to the same extent as private citizens.

1    818.8 of the California Government Code, which provides that "public entity is not liable for an

2    injury caused by misrepresentation by an employee of the public entity, whether or not such

3    misrepresentation be negligent or intentional," and section 822.2 of the Government Code, which

4    provides that a "public employee acting in the scope of his employment is not liable for an injury

5    caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional,

6    unless he is guilty of actual fraud, corruption or actual malice."

7           Plaintiffs argue that this claim may proceed based on allegations of actual fraud by Kime.

8    While section 822.2, governing public *employee* liability, includes an exception for fraud, section

9    818.8, governing public *entity* liability, does not.  Although the parties have not addressed this

10   distinction, Swann asserts her trespass claim only against the City; Kime is not a party to this case.

11   At least one California appellate court has applied section 818.8 to bar a common law fraud claim

12   against a public entity.  *Burden v. County of Santa Clara*, 81 Cal. App. 4th 244, 248 (2000).  The

13   Court therefore concludes that the fraud exception to this immunity does not apply to Swann's

14   claim against the City.  Plaintiffs' counsel did not dispute that conclusion at the hearing.

15          Plaintiffs also argue that trespass is not the type of claim governed by this immunity.

16   Despite the broad language of sections 818.8 and 822.2, California courts have long construed

17   them as encompassing only "invasion of interests of a financial or commercial character."  *See*

18   *Johnson v. State*, 69 Cal. 2d 782, 800 (1968).  California courts have therefore declined to apply

19   these immunities to claims based on other interests, including in the contexts of adoption and

20   social services, although they have held that the immunities apply to misrepresentations in the

21   contexts of employment claims and claims based on building codes.  *See Burden*, 81 Cal. App. 4th

22   at 248–52 (discussing, *e.g.*, *Johnson*, 69 Cal. 2d 782 (finding no immunity for a parole officer's

23   failure to warn a foster parent about a child's homicidal tendencies); *Michael J. v. L.A. Cty. Dept.*

24   *of Adoptions*, 201 Cal. App. 3d 859 (1988) (finding no immunity for failure to disclose a child's

25   medical condition to an adoptive parent); *Harshbarger v City of Colton*, 197 Cal. App. 3d 1335

26   (1988) (applying immunity where homeowners alleged that building inspectors intentionally

27   misrepresented whether their home met code standards)).  California appellate courts have divided

28   as to whether immunity applies where a claim is based on harm to a commercial interest, but the

United States District Court
Northern District of California

11

1    misrepresentation was not made in the context of a commercial relationship.  *Compare Connelly v.*

2    *State*, 3 Cal. App. 3d 744, 752 (1970) (finding no immunity where an incorrect water level

3    forecast led to damage at a marina, because "although appellant suffered a commercial loss in the

4    sense that his business installations were damaged, the loss did not result from a commercial

5    transaction between him and the state, nor from the state's interference with his commercial

6    transactions"), *with Tokeshi v. State*, 217 Cal. App. 3d 999, 1008 (1990) (declining to follow

7    *Connelly*'s "artificial distinction" and finding immunity where a state official gratuitously

8    instructed farmers to use a particular pesticide, but county officials thereafter forbade the farmers

9    from harvesting and selling crops sprayed with that pesticide), *and Jopson v. Feather River Air*

10   *Quality Mgmt. Dist.*, 108 Cal. App. 4th 492, 501 (2003) (describing *Connelly* as "aberrational").

11          The parties have not identified a case applying these immunity statutes to a claim for

12   trespass to land.  The Court is not persuaded that such a claim arises from the sort of "commercial

13   interest" governed by sections 818.8 and 822.2.  As noted above, "damage is not an essential

14   element of a cause of action for trespass to real property."  *Donahue Schriber*, 232 Cal. App. 4th at

15   1184; *see also Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1376 (2003) ("The law's special respect

16   for land ownership supports liability for damages even without actual harm.).  An "award of

17   nominal damages in [a] trespass action" may be "intended to redress intangible harm to the

18   'dignitary interests' of the landowner personally, and not injury to the land or to his personal

19   property."  *See Belle Terre Ranch, Inc. v. Wilson*, 232 Cal. App. 4th 1468, 1476 (2015).  An

20   occupant of land where trespass occurred may also recover damages for "annoyance and

21   discomfort," even if the occupant is not physically present at the time of the trespass.  *Hensley v.*

22   *San Diego Gas & Elec. Co.*, 7 Cal. App. 5th 1337, 1352–55 (2017).  In alleging Kime's entry

23   without valid authorization to the property where Swann lived, Swann asserts a claim based at

24   least in part on a noncommercial "dignitary interest," which falls outside the scope of sections

25   818.8 and 822.2.  Although a misrepresentation regarding permitting status or code compliance

26   might implicate those immunities, *see Harshbarger*, 197 Cal. App. 3d at 1342, Plaintiffs have not

27   alleged any such misrepresentation, nor must they, to support Swann's claim that Kime lied about

28

United States District Court
Northern District of California

1    having an appointment in order to gain entry to Swann's property.[5]

2          The Court therefore concludes that sections 818.8 and 822.2 provide no immunity for

3    Swann's trespass claim.  Defendants have not clearly argued that any other immunity statute bars

4    this particular claim, and the Court discerns no reason why any other statute addressed in the

5    parties' briefs would apply here.  Defendants' motion to dismiss this claim is DENIED.

6          **D.    IIED Claim**

7          Under California law:

8              A cause of action for intentional infliction of emotional distress exists
               when there is "(1) extreme and outrageous conduct by the defendant
9              with the intention of causing, or reckless disregard of the probability
               of causing, emotional distress; (2) the plaintiff's suffering severe or
10             extreme emotional distress; and (3) actual and proximate causation of
               the emotional distress by the defendant's outrageous conduct." A
11             defendant's conduct is "outrageous" when it is so "extreme as to
               exceed all bounds of that usually tolerated in a civilized community."
12             And the defendant's conduct must be "intended to inflict injury or
               engaged in with the realization that injury will result."
13
               [. . .]
14
               With respect to the requirement that the plaintiff show severe
15             emotional distress, this court has set a high bar. "Severe emotional
               distress means emotional distress of such substantial quality or
16             enduring quality that no reasonable [person] in civilized society
               should be expected to endure it."
17

18   *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*,

19   6 Cal. 4th 965, 1001 (1993)) (final alteration in original; internal citations omitted without

20   ellipses).

21         Defendants contend that they are immune from this claim under section 820.2 of the

22   California Government Code, which provides that, "[e]xcept as otherwise provided by statute, a

23   public employee is not liable for an injury resulting from his act or omission where the act or

24

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [5] At the hearing, defense counsel argued that the Court should look to the conduct at issue rather
26   than nature of the claim asserted.  The conduct at issue for the trespass claim, however, is Kime's
     alleged use of deception to enter Swann's property.  Such conduct is not inherently commercial,
27   and it implicates noncommercial interests.  To the extent that the broader context of that conduct
     might be relevant, Plaintiffs allege that Kime entered the property in order to retaliate against
28   Richards's protected speech on a matter of public interest.  That First Amendment issue is also not
     inherently commercial.

1    omission was the result of the exercise of the discretion vested in him, whether or not such

2    discretion be abused."  Cal. Gov't Code § 820.2.

3
4    > A discretionary act requires a conscious balancing of risks and advantages when making basic policy decisions, *see Bell v. State of California*, 63 Cal. App. 4th 919, 929, 74 Cal. Rptr. 2d 541 (1998); it does not protect operational or ministerial decisions that implement policies. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (citing *Johnson v. State of California*, 69 Cal. 2d 782, 796, 73 Cal. Rptr. 240, 447 P.2d 352 (1968)). A ministerial act is an act pursuant to an order, or an act where a person had no choice. *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261, 74 Cal. Rptr. 389, 449 P.2d 453 (1969). An operational act is one in which the person who made the decision, implemented the decision. *See id.*
5
6
7
8

9    *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1123 (C.D. Cal. 2006), *aff'd sub nom. Bernhard*

10   *v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008).

11        Plaintiffs' allegations here do not indicate that any of the conduct at issue was the sort of

12   "basic policy decision" immunized by section 820.2.  *See id.*  To the contrary, viewed in the light

13   most favorable to Plaintiffs, the complaint in this case largely describes "operational act[s] . . . in

14   which the person who made the decision, implemented the decision." *See id.*  Perhaps Defendants

15   will be able to show on an evidentiary record that Plaintiffs' injuries stemmed from reasoned

16   policy choices, but "Defendants will have the opportunity to make that showing at a later point in

17   the litigation." *McElroy ex rel. McElroy v. Tracy Unified Sch. Dist.*, No. 2:07-cv-00086-MCE-

18   EFB, 2009 WL 1324952, at *8 (E.D. Cal. May 12, 2009) (declining to apply section 820.2 on the

19   pleadings where the allegations did not show discretionary policy choices).  A case on which

20   Defendants rely, *Ogborn v. City of Lancaster*, was decided on summary judgment where the

21   factual record showed a distinction between decisionmaking and implementation that is not

22   evident from Plaintiffs' allegations here. *Ogborn*, 101 Cal. App. 4th 448, 461 (2002).  Based only

23   on the allegations of the complaint, Defendants are not entitled to discretionary immunity under

24   section 820.2.

25        Defendants also argue that they are immune under section 821.6 of the Government Code,

26   which provides that a "public employee is not liable for injury caused by his instituting or

27   prosecuting any judicial or administrative proceeding within the scope of his employment, even if

28   he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.  Although some

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    decisions of California appellate courts have construed the statute more expansively, the Ninth

2    Circuit has held that the California Supreme Court's narrow construction of the statute in 1974 as

3    limited to malicious prosecution actions remains controlling, and that a district court erred in

4    dismissing claims that were "not malicious prosecution claims." *Garmon v. Cty. of Los Angeles*,

5    828 F.3d 837, 847 (9th Cir. 2016) (citing *Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710 (1974)).

6    As Defendants note, the Ninth Circuit stated in an earlier decision that immunity from malicious

7    prosecution is merely the "principal function" of section 821.6, and that it "also 'extends to actions

8    taken in preparation for formal proceedings,' including actions 'incidental to the investigation of

9    crimes.'"  *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007) (quoting *Amylou R. v.

10   County of Riverside*, 28 Cal. App. 4th 1205, 1209–11 (1994)).  That decision went on to hold,

11   however, that the conduct at issue was not immunized by even that more expansive definition, and

12   *Garmon* expressly disapproved of the *Amylou R.* decision on which *Blankenhorn* relied.  *See id.*;

13   *Garmon*, 828 F.3d at 847.  One could argue, perhaps, that *Blankenhorn*'s view of this immunity as

14   extending beyond claims for malicious prosecution was dicta, and that *Garmon* should control.

15           Two district court decisions have taken a more nuanced approach, holding that section

16   821.6 immunizes *conduct* that could *support* a malicious prosecution claim as the California

17   Supreme Court described that doctrine in *Sullivan*—"'initiating or procuring the arrest and

18   prosecution of another under Lawful process but from Malicious motives and Without probable

19   cause'"—even if a claim is brought under some other caption.  *Colonies Partners LP v. Cty. of

20   San Bernardino*, No. EDCV 18-420 JGB (SHKx), 2018 WL 6137147, at *12–13 (C.D. Cal. Oct.

21   2, 2018) (quoting *Sullivan*, 12 Cal. 3d at 720); *see Botello v. Hanlon*, No. 2:18-cv-162-TLN-EFB

22   P, 2020 WL 1472377, at *4–5 (E.D. Cal. Mar. 26, 2020), *recommendation adopted*, 2020 WL

23   3250735 (E.D. Cal. June 16, 2020).  Those cases' reading of *Sullivan* and the statutory text has

24   some appeal, but whether they can be squared with the definitive limitation stated in *Garmon* is a

25   question that this Court need not resolve on the present motion.[6]  As noted in *Sullivan*, a malicious

26

27   _____

     [6] Although this Court does not reach an opinion on those decisions' ultimate conclusion on the
28   scope of section 821.6, the Court respectfully disagrees with the *Colonies Partners* court's reading
     of an earlier Ninth Circuit opinion, *Martinez v. City of Los Angeles*, 141 F.3d 1373 (9th Cir. 1998).

1   prosecution claim requires prosecution without probable cause.  *Sullivan*, 12 Cal. 3d 720; *see also,*

2   *e.g.*, *StaffPro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392, 1398 (2006).  Even if this

3   Court took the conduct-based approach of *Colonies Partners* and *Botello*, the conduct that

4   Plaintiffs allege here does not meet the definition of malicious prosecution, because Plaintiffs have

5   not alleged that Defendants *lacked probable cause* to issue notices of violation or to revoke

6   permits.  Whatever claim might be supported by retaliatory or malicious issuance of technically

7   valid violation notices or disproportionate but technically authorized revocation of permits, it is

8   not malicious prosecution, and it is not immunized by section 821.6.  *See Garmon*, 828 F.3d at

9   847 (disapproving of *Amylou R.*'s extension of section 821.6 to immunize prosecution initiated

10  with something less than malicious intent).

11          Section 821.2 of the Government Code, however, applies to at least some of Plaintiffs'

12  allegations.  That statute reads as follows:

13          A public employee is not liable for an injury caused by his issuance,
            denial, suspension or revocation of, or by his failure or refusal to
14          issue, deny, suspend or revoke, any permit, license, certificate,
            approval, order, or similar authorization where he is authorized by
15          enactment to determine whether or not such authorization should be
            issued, denied, suspended or revoked.
16

17  Cal. Gov't Code § 821.2.  Section 818.4 of the Government Code provides similar immunity for

18  public entities.

19          Plaintiffs' only argument with respect to this statute is that a case Defendants cite

20  considered a legislative rather than administrative permitting decision.  *See* Opp'n at 12

21  (distinguishing *Freeny v. City of San Buenaventura*, 216 Cal. App. 4th 1333 (2013)).  Nothing on

22  the face of the statute distinguishes between those circumstances.  To the contrary, the only

23  _____

24  In *Colonies Partners*, the Central District described *Martinez* as having "employed a conduct-
    based approach to determine the scope of § 821.6 liability, finding that the City of Los Angeles
25  was immune from a claim of false arrest under § 821.6 only after looking to the relevant
    underlying facts—the presence or absence of valid legal authority for the arrest—and finding that
26  the plaintiff's claim was in effect one of malicious prosecution." *Colonies Partners*, 2018 WL
    6137147, at *13.  In this Court's view, the Ninth Circuit noted that *if* the false arrest claim *were*
27  *construed* as a malicious prosecution claim it would fail under section 821.6, but the Ninth Circuit
    affirmed summary judgment on the false arrest claim because Mexican police, rather than the City
28  of Los Angeles or anyone acting under its direction, arrested the plaintiff. *Martinez*, 141 F.3d at
    1379–80.

limitation in the statutory text is that a public employee is not immune if the employee lacked

authority to determine whether a permit should be issued or revoked.  *See* Cal. Gov't Code

§ 821.2.  Plaintiffs have not alleged that Sweeney, Hernandez, or any other relevant actor lacked

such *authority* with respect to Six Dogs' permits.  Plaintiffs' counsel suggested at the hearing that

Plaintiffs might be able to amend to allege that permits cannot be revoked without allowing thirty

days to correct a violation, but no such allegation appears in the current complaint, and Plaintiffs

have not yet identified any authority requiring an opportunity to cure before revocation.  So long

as Sweeney and Hernandez had authority to revoke the permits, their subjective motivation is not

relevant to immunity under section 821.2.  *See Kay v. City of Rancho Palos Verdes*, 504 F.3d 803,

809–11 (9th Cir. 2007) (finding immunity under sections 818.4 and 821.2 even where "the record

suggest[ed] that the denial of Kay's permit may have been driven at least in part by animus on the

part of City officials").  Accordingly, Defendants are immune from liability under state law based

on the revocation of Six Dogs' building permits.

Setting aside the revocation of Six Dogs' permits for the purpose of the IIED claim,

Plaintiffs are left with allegations that Defendants issued violation notices (with no allegation that

the notices were inaccurate), that a DBI employee stated (apparently truthfully) at two open

houses that violations had been assessed, that Kime lied to a tenant to gain entry to Swann's

apartment building, and that Kime posted a notice of a fire code violation (with no allegation that

the notice was inaccurate).  While this order should not be construed as condoning the retaliatory

motive that Plaintiffs have alleged, or holding that it is not actionable under some other theory,

Defendants are correct that most of this conduct is essentially "vigorous enforcement of the law,"

at least as currently alleged.  *See* Reply at 5.  The exception is Kime's alleged misrepresentation

and trespass.  Taking the non-immunized allegations together, however, the Court concludes that

Plaintiffs have not alleged conduct "so extreme as to exceed all bounds of that usually tolerated in

a civilized community."  *See Hughes*, 46 Cal. 4th at 1051 (citation and internal quotation marks

omitted).  Plaintiffs' IIED claim is therefore DISMISSED with leave to amend.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' motion is GRANTED as to Plaintiffs' IIED

17

claim, which is DISMISSED with leave to amend no later than July 24, 2020.  The motion is

otherwise DENIED.

       **IT IS SO ORDERED.**

Dated: July 10, 2020

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

18